NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

SEYED MOHSEN SHARIFI TAKIEH, *Plaintiff/Appellant,*

*v.*

BANNER HEALTH, an Arizona Not-For-Profit Corporation, d/b/a
BANNER BAYWOOD MEDICAL CENTER, *Defendant/Appellee.*

No. 1 CA-CV 20-0110
FILED 5-13-2021

---

Appeal from the Superior Court in Maricopa County
No.  CV2017-055848
The Honorable Lisa Daniel Flores, Judge (Retired)

**AFFIRMED**

---

COUNSEL

Goldberg Law Group LLC, Scottsdale
By Michael K. Goldberg, Jenna E. Milaeger
*Co-Counsel for Plaintiff/Appellant*

William A. Miller PLLC, Phoenix
By William A. Miller, Stephen D. Smith
*Co-Counsel for Plaintiff/Appellant*

Coppersmith Brockelman PLC, Phoenix
By Andrew S. Gordon, Karen C. Owens, Katherine L. Hyde
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1        This appeal arises from A.R.S. § 36-445.02, which allows for judicial review of a private hospital's peer review process. Dr. Seyed Mohsen Sharifi Takieh ("Sharifi") appeals the superior court's decision affirming the revocation of his medical staff membership and privileges ("staff privileges") and the denial of his motion for new trial. For the following reasons, we affirm.

## BACKGROUND

¶2        Sharifi is an Arizona licensed physician who is board certified in several cardiology-related specialties. His practice includes administering thrombolytics, which is medication that breaks up blood clots in "deep vein thrombosis" procedures. *See Thrombolytic*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014). From 2005 to December 2018, Sharifi had medical staff privileges at Banner Baywood Medical Center ("BBMC") and three other Banner Health ("Banner") facilities.

¶3        In January 2017, hospital staff asked BBMC to intervene in Sharifi's treatment of a patient. Staff expressed concern because Sharifi administered thrombolytics to a patient when it was not appropriate. The hospital started an investigation, initially sending 16 cases for external review and ending up focusing on five. Of those five, two patients died and one needed to be transferred to a different hospital. The matter was then brought before the Medical Executive Committee ("Committee"). The investigation then led to Sharifi's peer review, which is internally regulated by the medical staff bylaws ("Bylaws").

¶4        In March 2017, Sharifi requested and received an external review of his treatment decisions. Each external reviewer gave negative reviews. As a result, the Committee proposed that Sharifi voluntarily obtain pre-approval before doing deep vein thrombosis procedures with thrombolytics. When he refused, the Committee imposed the pre-approval requirement and offered him a hearing to challenge the restriction. After

Sharifi objected to how the Committee would be empaneled for the purpose of conducting the hearing, the Bylaws were amended to clarify who was eligible to serve on the Committee.

**¶5**　　　In preparing for the hearing, the Committee found that of the eight cases they planned to present at the hearing, Sharifi had substantially altered the records in four of them. While Sharifi claimed these types of edits were acceptable, the Committee did not agree. After the hearing, the Committee recommended revoking Sharifi's staff privileges for three independent reasons: (1) patient care deficits; (2) improper and unethical alteration of medical records; and (3) abusive and bullying conduct toward individuals involved in the peer review process.

**¶6**　　　As permitted under the Bylaws, Sharifi requested a "Fair Hearing," the next administrative level of review. Three doctors who did not take part in the peer review comprised the Fair Hearing panel ("Panel"). A hearing officer conducted the hearing, during which the Panel heard testimony from 14 witnesses and received 85 exhibits. The Panel's 20-page report concluded that the Committee's recommendation to remove Sharifi from the medical staff was reasonable and warranted for each of the three grounds.

**¶7**　　　Sharifi appealed to the Appellate Review Committee ("ARC"), which then issued a 13-page report recommending the Board of Directors ("Board") terminate Sharifi's privileges. The ARC rejected Sharifi's claims of procedural error and concluded that revocation of Sharifi's staff privileges was justified under each ground. After considering the ARC recommendations, the Board terminated Sharifi's staff privileges in December 8, 2018.

**¶8**　　　Sharifi filed a complaint in superior court alleging various claims, including breach of contract and declaratory judgment. He also sought injunctive relief to prevent Banner from reporting the adverse action to the National Practitioner Data Bank ("Data Bank") until the hearings and appeals were completed. Eventually the superior court dismissed Sharifi's contract and declaratory judgment claims. The court denied Sharifi's request for injunctive relief under A.R.S. § 36-445.02 and issued a judgment in favor of Banner, finding that substantial evidence supported revocation on all three grounds.

**¶9**　　　Sharifi sought a new trial under Arizona Rule of Civil Procedure ("Rule") 59(a)(1)(A) and (B) claiming "irregularity in the proceedings or abuses of discretion depriving the party of a fair trial" and

"misconduct of the . . . prevailing party." Sharifi attached new declarations alleging Banner was prejudiced against him due to his race and religion, which meant the decision maker was biased because termination of staff privileges was a "foregone conclusion." Banner objected, arguing Rule 59 was not applicable to judicial review of a hospital peer review. The superior court agreed and denied the motion for a new trial. Sharifi then appealed.

## DISCUSSION

¶10       Sharifi does not challenge the sufficiency of the evidence against him. Rather, he asserts there were procedural errors in the peer review process, and it was affected by racial and religious bias. Sharifi also argues the superior court abused its discretion in (1) denying him injunctive relief under A.R.S. § 36-445.02, (2) dismissing his contract and declaratory judgment claims arising out of the peer review process, and (3) denying his motion for a new trial.

### A.    Appellate Jurisdiction

¶11       We have an independent duty to examine our own jurisdiction. *Abril v. Harris*, 157 Ariz. 78, 80 (App. 1987). We are "a court of limited jurisdiction and ha[ve] only jurisdiction specifically given to [us] by statute." *Campbell v. Arnold*, 121 Ariz. 370, 371 (1979). Timely notice of appeal is "a prerequisite to appellate jurisdiction." *Wilkinson v. Fabry*, 177 Ariz. 506, 507 (App. 1992). Generally, a party must file a notice of appeal no more than thirty days after the entry of final judgment, ARCAP 9(a), unless a party files a timely and proper post judgment motion. *See* Ariz. R. Civ. P. 50(b), 52(b), 59(a), 59(d), 60(a), or 60(b).

¶12       Sharifi filed his notice of appeal after the superior court's denial of his Rule 59 motion. Banner argues Sharifi did not file a timely notice of appeal within 30 days of judgment as required by ARCAP 9(a) because Sharifi was not entitled to the time-extending benefit of a motion for new trial under Rule 59. The question before us is whether a motion purporting to be a Rule 59 motion and describing grounds under that rule should be treated as a motion that extends the time for appeal.

¶13       We do not necessarily consider a motion to be what it is titled; rather, we look to the substance of the motion and address it accordingly. *Hegel v. O'Malley Ins. Co., Agents & Brokers*, 117 Ariz. 411, 412 (1977). In *Hegel*, our supreme court concluded that irrespective of how the party "style[s]" a motion, if the motion cites a rule governing time-extending motions and states a ground recognized by that rule, the court will treat it as a time-extending motion. *Id.* The supreme court affirmed these

principles in *Farmers Insurance Co. of Arizona v. Vagnozzi*, 132 Ariz. 219, 221 (1982).  Here, Sharifi cited Rule 59 and explained there were grounds for a court to grant a new trial due to "irregularities in the proceedings or abuses of discretion depriving the party of a fair trial, and misconduct of the prevailing party."  Thus, his post-judgment motion could properly qualify as a time-extending motion for new trial, rendering his notice of appeal timely.  We decline to decide whether a Rule 59 motion is an appropriate method of raising a post-judgment challenge in a § 33-445.02(B) proceeding.

### B.     Immunity Statute

**¶14**          Hospitals are statutorily required to organize physicians "into committees or other organizational structures to review the professional practices within the hospital or center" in a process known as peer review. *See* A.R.S. § 36–445.  The purpose of peer review is to "reduc[e] morbidity and mortality and for the improvement of the care of patients provided in the institution."  *Id*.

**¶15**          "A hospital is a place fraught with constant pressure and emergency.  In such an atmosphere, personal animosity, jealousy, anger and irritation can be expected, especially when the process of peer review is involved."  *Scappatura v. Baptist Hosp. of Phoenix*, 120 Ariz. 204, 210 (App. 1978).  Thus, the legislature created immunity for participants and hospitals within the peer review process, thereby protecting them from civil damages or legal action in consequence of their involvement in the peer review process. *See* A.R.S. § 36-445.02.  The statute reads as follows:

> Immunity relating to review of medical practices . . . The only legal action which may be maintained by a licensed health care provider based on the performance or nonperformance of such duties and functions *is an action for injunctive relief* seeking to correct an erroneous decision or procedure.  The review shall be limited to a review of the record.  If the record shows that the denial, revocation, limitation or suspension of membership or privileges *is supported by substantial evidence*, no injunction shall issue.

*See* A.R.S. § 36-445.02(B) (emphasis added).  We review peer review proceedings for both procedural and substantive errors and employ a deferential standard of review.  *Hourani v. Benson Hosp.*, 211 Ariz. 427, 431–32 (App. 2005).

## C.     Injunctive Relief

¶16          As noted, injunctive relief is the only remedy available under A.R.S. § 36-445.02(B).  The grant or denial of a preliminary injunction is within the sound discretion of the superior court and we will not reverse that decision absent an abuse of that discretion.  *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 366 (1999).  A party seeking a preliminary injunction must show (1) a strong likelihood of success on the merits, (2) possibility of irreparable injury, (3) the balance of hardships favors the party seeking the injunction, and (4) public policy is in favor of the injunction.  *IB Prop. Holdings, LLC v. Ranch Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 64, ¶ 9 (App. 2011).

¶17          Sharifi sought injunctive relief to stop Banner from reporting any non-final disciplinary action to the Data Bank.  The superior court issued a temporary restraining order ("TRO"), but it expired in late December 2018, and the court declined to extend it.  The court found no irreparable harm, reasoning that because a process exists that would allow Sharifi to seek a "'voiding report' which would reverse the negative impact of the report," any potential harm was not irreparable.  Once the TRO expired, Banner could properly finalize the revocation of Sharifi's staff privileges and report his status to the Data Bank.  The court did not abuse its discretion in denying an extension of the TRO.

### 1.     Procedural Defects

¶18          Sharifi argues numerous procedural defects occurred throughout the peer review process.  The right to a "fair trial in a fair tribunal" is "intrinsic to due process."  *Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195 Ariz. 148, 152, ¶ 12 (App. 1999) (citation omitted).  "Every person is entitled to a fair administrative hearing . . . rendered by an impartial decisionmaker."  *Id.*  And due process of law contemplates a "fair trial in a fair tribunal."  *United States v. Superior Court*, 144 Ariz. 265, 280 (1985) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).

¶19          Here, the superior court relied on *Scappatura* and explained that review of Sharifi's procedural challenges was limited to whether the hospital acted "unlawfully, arbitrarily or capriciously in the implementation of the bylaws."  *See* 120 Ariz. at 208.  Section 36-445.02 limits the court's review to an examination of the record to determine whether substantial evidence supports a revocation of staff privileges and whether the hospital substantially complied with its Bylaws in reaching its decision.

¶20        Sharifi first argues that Dr. Hirsch should not have been appointed as an external reviewer because he did not practice in the same subspecialty of Interventional Cardiology and because he worked for another entity owned by Banner. The Bylaws require that an investigation take place and that a peer review committee be established, including appointment of at least one practitioner not employed by Banner who is actively participating in the same specialty as the practitioner being reviewed. Any error in the selection of Dr. Hirsch occurred at the investigation stage, not the hearing stage. And Sharifi had the opportunity to cross-examine Dr. Hirsch at the Fair Hearing, which he did extensively, as did his attorney.

¶21        Sharifi also argues the time limit for the Fair Hearing was arbitrary and resulted in prejudice. The hearing lasted nearly sixteen hours. Sharifi requested additional time, but the hearing officer asked the Panel members if they would like additional time for the hearing and they all responded they felt they had enough information. The Panel also explained that how Sharifi spent the time was up to him and the fact that he did not have time to testify was a problem "entirely of Dr. Sharifi's own making." Of the total hearing time, Sharifi used 395 minutes and the hospital used 300 minutes. There is no evidence that the time allotted was insufficient or resulted in prejudice.

¶22        Sharifi asserts he was prejudiced because one of the external reviewers submitted his report the same week as the Fair Hearing and the Bylaws require reports to be submitted 14 days in advance. While submission of the report after the deadline may have violated the Bylaws, Sharifi does not explain how this resulted in prejudice.

¶23        Sharifi takes the position that *Hourani* stands for the principle that a showing of *any error*—procedural or substantive—would warrant injunctive relief. 211 Ariz. at 431–32. But this overstates the holding in *Hourani*, which held that plaintiffs can "seek injunctive relief for an *erroneous decision or procedure* occurring during the peer review process." *Id.* at 431, ¶ 9 (citing 1984 Ariz. Sess. Laws, ch. 119, § 1) (emphasis added). Unlike the present case, in *Hourani* the superior court found multiple blatant procedural defects. *Id.* at 433, ¶¶ 17, 20. Sharifi had notice prior to each stage of the peer review process and there were multiple pre-hearing meetings with the hearing officer and parties to discuss procedures. He prepared position statements and exhibits. And Sharifi was given a full opportunity to present evidence, including testimony from nine of his own medical witnesses, as well as cross-examination of adverse witnesses. In fact, both Sharifi and his counsel independently conducted cross-

examinations of witnesses. Sharifi failed to show that any procedural defects affected the outcome, let alone that any occurred.

¶24        The superior court appropriately considered "whether the procedures used were arbitrary, capricious, or unlawful," and whether the alleged procedural violations harmed or prejudiced Sharifi. After review, we conclude the process was fair and thorough, and Banner substantially complied with the Bylaws. Thus, Sharifi has not shown that denial of injunctive relief was improper based on procedural irregularities.

## 2.      Substantial Evidence

¶25        Substantial evidence in the record supports the revocation of Sharifi's staff privileges for each of the three grounds alleged during the peer review process: (1) deficits in care given to patients, (2) altering medical records, and (3) bullying behavior.

¶26        Consistent with the superior court's analysis, we will not substitute our own judgment for that of the Board on issues where expertise is involved. *DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 336 (App. 1984) (A court may not "function as a 'super agency' and substitute its own judgment for that of the agency where factual questions and agency expertise are involved."). The Board heard substantial evidence concerning the deficits in care caused by Sharifi in multiple situations. For example, Sharifi failed to consult with a patient's treating physician and used thrombolytic therapy in a post-surgery case even when it was contraindicated, and the patient died. There is also substantial evidence that Sharifi altered medical records. And as the superior court found, "Sharifi never denied modifying the records, and instead took the position that the alterations were acceptable edits." Likewise, Sharifi did not deny any of the allegations of bullying behavior. Because substantial evidence supports the revocation of Sharifi's staff privileges, Sharifi was not entitled to injunctive relief.

## 3.      Dismissal of Other Claims

¶27        Sharifi asserts the superior court erred in dismissing his contract-related claims (breach of contract, implied covenant of good faith and fair dealing) against Banner. We review de novo the dismissal of a complaint under Rule 12(b)(6). *Swenson v. Cty. of Pinal*, 243 Ariz. 122, 125, ¶ 5 (App. 2017). Dismissal is appropriate "only if as a matter of law . . . plaintiff[] would not be entitled to relief under any interpretation of the facts susceptible of proof." *Id.* (quotation and citation omitted).

¶28        A hospital's bylaws create a contract with staff and those bylaws outline the procedures the hospital will follow during disciplinary actions. *See Samaritan Health Sys. v. Superior Court*, 194 Ariz. 284, 288, ¶ 12 (App. 1998). But all Sharifi's claims unrelated to injunctive relief are expressly barred by § 36-445.02. His contract-related claims are precisely the type of action the immunity statute was intended to preclude. Those claims were properly dismissed.

### D.        Denial of a New Trial

¶29        We review the denial of a motion for new trial for an abuse of discretion. *Jaynes v. McConnell*, 238 Ariz. 211, 215–16, ¶ 13 (App. 2015). The superior court concluded that Sharifi failed to show the court had the authority to consider the new declarations and thus he did not establish entitlement to relief under Rule 59(a)(1)(A) or (B).

¶30        Sharifi argued in his Rule 59 motion that those involved with the peer review process were biased against him because of his race and religion and aimed to "get rid of [him] at all costs." To show bias, Sharifi needed to cite to evidence in the record making it affirmatively probable the alleged bias or misconduct changed the outcome of the administrative proceeding. *See Hourani*, 211 Ariz. at 434, ¶ 23. All decision makers, judges, and administrative tribunals alike, are entitled to a presumption of "honesty and integrity." *Pavlik*, 195 Ariz. at 155, ¶ 27. Sharifi did not overcome that presumption.

¶31        None of the declarations introduced in Sharifi's motion for a new trial were included in the record prior to the Rule 59 motion. The declarations contained allegations that some members of the peer review process made negative remarks about Sharifi's race and religion. But Sharifi failed to prove the superior court had the authority to consider declarations that were not previously part of the record. As the superior court held, Sharifi "failed to prove any actual bias" of the Panel, and the declarations attached to his motion did not prove any such bias. We find no abuse of discretion in the court's denial of the Rule 59 motion.

**CONCLUSION**

**¶32** We affirm the court's revocation of Sharifi's staff privileges and the subsequent denial of his motion for new trial. We award taxable costs to Banner subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA